Filed 11/22/24  P. v. Hawkins CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099732 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE004375) |
| v. | |
| KET THEODORE HAWKINS, | |
| Defendant and Appellant. | |

Following the denial of his request for pretrial mental health diversion pursuant to Penal Code section 1001.36,[1] defendant Ket Theodore Hawkins pled no contest to the unlawful possession of cocaine for sale.  Hawkins now appeals the denial of his diversion request, arguing the trial court abused its discretion by finding Hawkins' mental health

---

[1] Further undesignated statutory references are to the Penal Code.

1

disorder was not a significant factor in the commission of his crime and, thus, ineligible for diversion.  Finding no abuse of discretion, we affirm.

BACKGROUND

In March 2023, law enforcement found Hawkins in possession of 26.73 grams of cocaine and 331 fentanyl pills.  The People charged Hawkins with possession of cocaine and fentanyl for the purpose of sale (Health & Saf. Code, § 11351).  Hawkins pled not guilty and filed a request for pretrial mental health diversion pursuant to section 1001.36.  The People opposed the request.

In support of his request, Hawkins included main jail mental health assessments conducted in June 2023, which indicated Hawkins suffered from adjustment disorder with mixed anxiety and depressed mood.  Hawkins reported that his cousin had recently been killed in a car accident; he also recently lost his brother and another cousin.  He was having trouble sleeping and thought maybe "God" was sending him a message to " 'clean up' " his life.  The treatment plan identified Hawkins' target symptoms as "[l]ow mood, grief, and trouble sleeping."  The goals were to "[m]aintain safety [and] improve mood."

Hawkins also relied on a crisis assessment conducted in August 2023.  Hawkins reported to the provider that he was having "flashbacks, nightmares, crying spells, [and] intrusive thoughts about past trauma."  Hawkins was feeling "deep sadness" about losing friends and family and being in jail.  He reported "pacing, racing thoughts, and fidgeting."

In the portion of the crisis assessment titled "[c]ircumstances leading to current crisis" Hawkins' care provider wrote "[c]lient was likely experiencing mental health symptoms while committing a crime; client is now incarcerated."  The crisis assessment concluded with the following diagnoses:  major depressive disorder, generalized anxiety disorder, "[o]pioid use, unspecified with unspecified opioid-induced disorder," and cannabis use unspecified.

2

In support of his petition for mental health diversion, Hawkins also relied on a psychodiagnostic assessment conducted in July 2017, by Jared Maloff, PsyD, QME (the Maloff Report). That assessment was conducted in conjunction with a motion to withdraw from a plea agreement and was deemed "necessary in order to determine [Hawkins'] ability to adequately maintain attention and concentration and comprehend detailed verbally administered data." In his report, Maloff noted Hawkins had trouble sitting still and opined this was consistent with Hawkins' "history of [attention deficit hyperactivity disorder]." Maloff also observed that testing "indicate[d] the presence of an intellectual disability."

In their opposition to Hawkins' petition, the People argued that "[s]elling drugs is not a function of his mental illness." In support of their argument, the People noted the amount of drugs Hawkins had in his possession at the time of his arrest, along with $3,520 in cash. In addition, they noted, Hawkins was previously convicted of marijuana sales.

At the hearing on Hawkins' petition, the trial court asked the parties to speak to the "nexus" between any mental health disorder Hawkins may have and the crime he committed. In response, Hawkins' counsel asked the court to consider the big picture: the prior attention deficit hyperactivity disorder (ADHD) diagnosis along with the current diagnoses for adjustment disorder and opioid-use disorder. In that context, counsel argued, "a person addicted to a substance, . . . will often sell that same substance in a way to feed their habit." The court acknowledged that people will often buy a drug in bulk, selling some to offset their cost but consuming the remainder on their own. Counsel went on to argue that Hawkins' opioid possession was a result of his opioid-use disorder. And the cocaine, he argued, was likely being used by Hawkins to self-medicate his ADHD.

The trial court was not persuaded. The court expressed empathy for Hawkins' addiction but noted Hawkins was not just using drugs; based on the amount of drugs and cash found in his possession, he was "trafficking in narcotics." The amount of drugs, and

3

the more than $3,000 in cash was "consistent with someone who is selling narcotics." Based on that evidence, the court found Hawkins was not selling drugs to feed his habit, he was selling drugs to make money, and selling drugs was not a function of his addiction or mental health diagnoses.

After the trial court denied his petition for mental health diversion, Hawkins pled no contest to the unlawful possession of cocaine for the purpose of sale. The court subsequently sentenced Hawkins to two years in county jail and awarded him 397 days of custody credit.

Hawkins filed a timely notice of appeal.

DISCUSSION

A.    *Section 1001.36*

"As presently enacted, section 1001.36, subdivision (b) provides that a defendant is eligible for pretrial diversion if two criteria are met. First, the defendant has been diagnosed with a mental disorder, . . . , within the last five years by a qualified mental health expert. (§ 1001.36, subd. (b)(1).) Second, the 'defendant's mental disorder was a significant factor in the commission of the charged offense.' (§ 1001.36, subd. (b)(2).) 'If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.' (*Ibid.*)

"If a defendant meets these eligibility requirements, the court also must find that the defendant is suitable for pretrial diversion based on satisfaction of the following criteria: '(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . [¶] (3) The defendant agrees to

4

comply with treatment as a condition of diversion . . . . [¶] [and] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community.' (§ 1001.36, subd. (c)(1)-(4).)" (*People v. Graham* (2024) 102 Cal.App.5th 787, 795.)

B.     *Standard of Review*

"A trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion . . . . [Citation.] . . . [Citation.] 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147.) The fact that reasonable minds may differ as to the appropriate resolution of an issue does not signal an abuse of discretion. (*People v. Clair* (1992) 2 Cal.4th 629, 655.) It is the defendant's burden to establish abuse of discretion. (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.)

C.     *Analysis*

Hawkins contends the trial court's decision was not supported by substantial evidence. We disagree.

To grant pretrial diversion, the trial court must conclude a defendant's mental disorder substantially contributed to his or her involvement in the commission of the offense. (*People v. Oneal* (2021) 64 Cal.App.5th 581, 592.) "[W]hen determining whether a defendant's mental disorder was a significant factor in the commission of the charged offense for purposes of mental health diversion, section 1001.36 broadly permits the trial court to consider 'any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent

5

with the relevant mental disorder at or near the time of the offense.' " (*Id.* at p. 591, italics omitted.)

Here, Hawkins offered three documents in support of his petition: the main jail mental health assessment, the crisis assessment, and the Maloff Report.[2] These documents reflect Hawkins' diagnoses of anxiety, depression, ADHD, and drug addiction. The Maloff Report also suggests Hawkins may have an intellectual disability. None of these reports conclude that any of Hawkins' mental health disorders were a substantial factor in the commission of his crime. Indeed, counsel presented no evidence that any of Hawkins' mental health disorders significantly contributed to the commission of his crime. Rather, counsel argued that people with drug addictions often sell drugs to support their addiction (which the trial court acknowledged was often true) and people with ADHD sometimes self-medicate with street drugs.

On the other hand, the record does contain evidence supporting the trial court's conclusion that Hawkins was selling drugs to make money. First, this was not Hawkins' first conviction for selling drugs. More importantly, as the trial court found, the amount of drugs in Hawkins' possession exceeded an amount intended for personal use. And given the amount of cash in Hawkins' possession, it was not unreasonable for the trial court to conclude Hawkins was not selling the drugs just to sustain his habit, but as a way to make money.[3]

---

[2] The Maloff Report is not even relevant. Section 1001.36 limits relevant mental health disorder diagnoses to those made within five years of a defendant's criminal offense. (§ 1001.36, subd. (b)(1).) The Maloff Report was created in July 2017, more than five years before Hawkins was arrested for the confinement offense. We consider it here for the sake of argument only because even with the Maloff Report, Hawkins failed to carry his burden on appeal.

[3] We also note Hawkins does not cite to any authority on appeal supporting his claim that selling drugs to support a drug addiction renders him eligible for section 1001.36 mental health diversion.

In sum, the trial court's decision to deny Hawkins' petition for mental health diversion was neither arbitrary nor capricious.  It was supported by substantial evidence and was a proper exercise of the trial court's discretion.**4**

DISPOSITION

The judgment is affirmed.

_____/s/_____
EARL, P. J.

We concur:

_____/s/_____
RENNER, J.

_____/s/_____
KRAUSE, J.

---

**4**     In his opening brief, Hawkins raises the issue of his suitability for mental health diversion.  The trial court expressly did not rule on the question of suitability, having found Hawkins ineligible.  Because we affirm the trial court's ruling on eligibility, we will not address Hawkins' suitability claims.